wo

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Michael Calmese, | ) | No. CV-06-1959-PHX-ROS |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| Nike, Inc., | ) ) | |
| Defendant. | ) ) | |
| | ) ) | |

**Procedural History**

On August 11, 2006, Plaintiff filed a three-count Complaint alleging Defendant infringed Plaintiff's registered trademark (PROVE IT!) in violation of state and federal law (Docs. 1, 6). On October 16, 2008, Defendant's Motion for Summary Judgment was granted and the Complaint was dismissed (Docs. 120-21). On October 30, 2008, Defendant filed a Motion for Award of Attorneys' Fees, which is fully briefed (Docs. 122, 125-27). On November 17, 2008, Plaintiff filed a Motion for Reconsideration of the October 16, 2008 dismissal (Docs. 123-24). Before the Court are Defendant's Motion for Award of Attorneys' Fees and Plaintiff's Motion for Reconsideration, both of which will be denied.

**A. Motion For Reconsideration**

To prevail on a motion for reconsideration, a movant is "ordinarily" required to make a "showing of manifest error or a showing of new facts or legal authority that could not have been brought to [Plaintiff's] attention earlier with reasonable diligence." LRCiv. 7.2(g). The Motion fails to meet this standard or otherwise explain why reconsideration is warranted. Part A of the Motion provides a litany of reasons, none of which are rooted in law, show manifest error or provide new facts, arguing why Plaintiff should have been excused from complying with various rules of evidence and civil procedure. Part B simply recapitulates the same failed arguments presented in Plaintiff's Response to Defendant's Motion for Summary Judgment. Accordingly, the Motion will be denied.

**B. Motion For Award of Attorneys' Fees**

**1. Standard**

The Lanham Act allows the prevailing litigant in a federal trademark infringement lawsuit to collect reasonable attorneys' fees upon a showing of exceptional circumstances. See 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."). However, the exceptional circumstances requirement is construed narrowly and thus such an award is rarely granted. See Classic Media, Inc. v. Mewborn, 532 F.3d 978, 990 (9th Cir. 2008) (interpreting § 1117(a)'s exceptional circumstances requirement narrowly); Gracie v. Gracie, 217 F.3d 1060, 1071-72 (9th Cir. 2000) (same).

To establish exceptional circumstances, a prevailing defendant must show the plaintiff's claims were "groundless, unreasonable, vexatious, *or* pursued in bad faith." Cairns v. Franklin Mint Co., 292 F.3d 1139, 1156 (9th Cir. 2002) (internal citation omitted). The threshold for meeting this standard is high. See e.g. K-Jack Eng'g Co., Inc. v. Pete's Newsrack Inc., 209 U.S.P.Q. 386, *[3] (C.D. Cal.1980) (awarding § 1117(a) attorneys' fees when plaintiff filed a trademark infringement lawsuit "without any basis of admissible evidence for a good faith belief that such infringement was occurring"); Grey v. Campbell Soup Co., 650 F. Supp. 1166, 1176 (C.D. Cal. 1986) (awarding § 1117(a) attorneys'

when plaintiff filed a trademark infringement claim described as an "utter falsity"); cf. M2 Software, Inc. v. M2 Commc'ns, L.L.C., 281 F. Supp.2d 1166, 1177 (C.D. Cal. 2003) (denying award of § 1117(a) attorneys' fees because defendant failed to show plaintiff's suit "was wholly groundless or unreasonable.") (internal citation omitted).[1] Accordingly, a trial court has broad discretion to deny a motion for attorneys' fees. See 15 U.S.C. § 1117(a) ("The court in exceptional cases *may* award reasonable attorney fees to the prevailing party.")(emphasis added); cf. Mattel, Inc. v. Walking Mountain Prod.'s, 353 F.3d 792, 816 (9th Cir. 2003) (reversing district court's failure to award attorneys' fees for lack of explanation).

**2. Motion**

Defendant argues for an award of attorneys' fees by characterizing Plaintiff's lawsuit as an unfounded action filed solely to coerce Defendant into settlement with the threat of escalating legal fees. Defendant relies on four factual arguments to establish that Plaintiff's action is "groundless, unreasonable, vexatious, *or* pursued in bad faith." Cairns, 292 F.3d at 1156. Defendant's factual assertions are insufficient to support the requested award and the Motion will be denied.[2]

---

[1] See also Cairns, 292 F.3d at 1156 (upholding award of § 1117(a) attorneys' fees because plaintiff's "trademark claim was groundless and unreasonable" with "no legal basis"); Matrix Motor Co., Inc. v. Toyota Motor Sales, U.S.A., Inc., 120 Fed. Appx. 30, 32 (9th Cir. 2005) (upholding award of § 1117(a) attorneys' fees because plaintiff "did not engage in prior use of the mark and the likelihood of confusion between the two marks in this case [was] near zero").

[2] Defendant also cites the "malicious, fraudulent, deliberate, or wilful" standard. Int'l Olympic Comm. v. San Francisco Arts & Athletics, 781 F.2d 733, 738 (9th Cir. 1986) (internal citation omitted). However, this standard is only applicable when determining the award of attorneys' fees against an alleged infringer/defendant, not against an infringee/plaintiff as is the case here. See Id. ("The statute itself contains no definition of what constitutes 'exceptional circumstances.' The Senate Report says that exceptional circumstances include conduct that is 'malicious, fraudulent, deliberate, or wilful.'") (citing 15 U.S.C. § 1117(a); S. Rep. No. 93-1400 (1974)); S. Rep. 93-1400 ("The Department of Commerce believes and the Committee agrees that the remedy should be available in exceptional cases, i.e., in infringement cases *where the acts of infringement can be characterized as 'malicious,' 'fraudulent,' 'deliberate,' or 'willful.'*")

1    According to Defendant, a "non-prevailing party's failure to cite controlling law

2  makes a case 'extraordinary' under the Lanham Act" (Doc. 125 at 9).  The Court disagrees.

3  Defendant relies on a Fourth Circuit case which, by its terms, states it is departing from the

4  law of the Ninth Circuit and the majority of federal courts of appeal.  See Retail Serv.'s, Inc.

5  v. Freebies Publ'g, 364 F.3d 535, 550 (4th Cir. 2004) ("We depart from a number of other

6  courts, however, once the analysis moves beyond the general definition of an 'exceptional

7  case.' . . . Some pertinent considerations for judging a plaintiff's . . . conduct when the

8  defendant prevails include economic coercion, groundless arguments, and failure to cite

9  controlling law.") (internal citation omitted).  Even were the Court to adopt the Fourth

10  Circuit's interpretation of § 1117(a), that the failure to cite controlling law may warrant an

11  award of attorneys' fees, Defendant makes no showing that Plaintiff's failure to cite such law

12  or otherwise draft well-written briefs is indicative of bad faith or an unreasonable claim

13  rather than a lack of legal training.

14    Defendant also argues Plaintiff's failure to follow proper procedure when preparing

15  affidavits of customer confusion is indicative of Plaintiff's bad-faith and thus a proper basis

16  on which to award attorneys' fees.  Again the Court disagrees.  Plaintiff prepared identical

17  statements attesting to trademark confusion between Plaintiff's and Defendant's products,

18  asked friends and colleagues to sign the statements and then submitted the signed statements

19  to the Court as sworn affidavits (Docs. 12, 15, 26 Ex. 4-6, 112 Ex. 8-10).  When conducting

20  depositions, Defendant discovered that at least three of the affiants claimed to have not

21  signed the statements in the presence of a notary and now argues Plaintiff, in bad faith,

22  improperly notarized the documents outside the presence of the affiants (Doc. 112 Ex. 8-10).

23  While such conduct, if true, may be sanctionable, Defendant offers no direct evidence that

24  Plaintiff improperly notarized the documents and the facts referenced are insufficient to meet

25  Defendant's burden to justify an award of § 1117(a) attorneys' fees.  Moreover, even if

26  _____

27  (emphasis added).

28

Plaintiff committed the alleged act, it is unclear that Plaintiff understood the impropriety of his actions, a finding which would be necessary to infer the bad-faith intentions argued by Defendant.[3]

Defendant further argues Plaintiff filed various futile papers, such as the Reply by Plaintiff to Defendant's Answer (Doc. 27), Motion to Strike Defendant's Response to Plaintiff's Request for Admissions (Doc. 91) and Motion to Compel (Doc. 89), among others, for the sole purpose of escalating Defendant's legal costs, acts which are allegedly indicative of Plaintiff's bad-faith intent and the groundlessness of his claims. However, Defendant offers no support for this argument. Another equally possible explanation for Plaintiff's filings is his lack of legal training and unfamiliarity with litigation procedure. While Plaintiff is not excused for appearing before the Court without informing himself of the law and procedures, such oversight does not amount to bad faith or establish the groundlessness of his claims. Similarly, the fact that Plaintiff "bombarded [Defense] counsel with letters demanding that [Defendant] produce information completely irrelevant to this matter, sometimes sending multiple letters or e-mails in the same day" was just as likely the product of Plaintiff's frustration with unfamiliar discovery rules and procedures rather than bad faith or groundless claims (Doc. 125 at 8).[4]

Defendant's strongest argument is that Plaintiff's pre-litigation conduct demonstrates a bad-faith intent to coerce a settlement from Defendant rather than pursue a bona fide legal

---

[3]Plaintiff's Response does not address Defendant's allegations of improper affidavit preparation but Defendant has not alleged that the witnesses denied the *content* of the affidavits.

[4]Defendant also attempts to support this position by arguing Plaintiff "repeatedly failed to comply with Court orders" (Doc. 125 at 8). However, no evidence, besides the Court's Rule 16 Scheduling Order, is referenced to substantiate this allegation. Defendant further alleges Plaintiff filed a bad-faith Motion for Preliminary Injunction (Doc. 3), arguing Plaintiff knew the allegedly infringing advertisements had ceased publication almost two years before the Motion was filed and thus the Motion was moot (Doc. 125 at 6). However, the only evidence raised to support this argument, Exhibit F to Defendant's Second Motion for Summary Judgment (Doc. 112), was incorrectly cited, as the exhibits attached to the Second Motion for Summary Judgment are labeled numerically, not alphabetically, and thus there is no Exhibit F which the Court was able to identify.

1   claim.  Defendant points to a June 26, 2005 letter, written by Plaintiff prior to litigation,

2   identifying Defendant's allegedly infringing advertisement and threatening that Plaintiff

3   "certainly could (and would) make [Defendant] miserable in Court should [Plaintiff] not

4   receive satisfaction" in the form of a "$50,000 . . . compensatory pay-off" (Doc. 13 Ex. 2E).

5          Inexplicably, Plaintiff supports Defendant's argument by bringing to the Court's

6   attention numerous prior or pending cases in which Plaintiff engaged in identical conduct to

7   win large settlements from other sporting-good retailers (Doc. 127 at 2-3).  The two most

8   recent, one filed in the Southern District of New York in 2006 and another in the District of

9   Oregon in 2008, confirm Defendant's allegation that Plaintiff "has made a pattern – and even

10  his living – off of suing companies in hopes of getting a big  payday" (Doc. 125 at 10).  In

11  all three cases, including the present, Plaintiff saw an advertisement or sporting good product

12  produced by a large corporation that incorporated the phrase "prove it."   Plaintiff

13  subsequently contacted each company, demanding compensation for the infringement and

14  threatening a lawsuit, often using identically-worded threats: "Calmese has threatened that

15  he 'could (and would) make Eastbay miserable in Court should [he] not receive

16  satisfaction.'" Pla.'s Compl. at ¶ 16, Eastbay, Inc. v. Calmese, CV-06-0162 (S.D. N.Y.) (Jan.

17  10, 2006); see also Def.'s Opp'n to Pla.'s Mot. for a Prelim. Inj. at Ex. 2E, Calmese v. Nike,

18  Inc., CV-06-1959-PHX-ROS (Doc. 13) ("I certainly could (and would) make Nike miserable

19  in Court should I not receive satisfaction here.").  To expedite settlement, Plaintiff then sent

20  numerous correspondences to each target, apparently to convince  everyone involved that

21  Plaintiff was in fact capable of making the opposing party miserable in court.  See Pla.'s

22  Compl. at ¶¶ 14-16, Eastbay, Inc., CV-06-0162; Pla.'s Compl. at ¶¶ 16-19, Adidas of Am.,

23  Inc. v. Calmese, CV-08-0091 (D. Or.) (Jan. 18, 2008).[5]

24

25         [5]See also Pla.'s Mot. to Have Def. Declared Vexatious Litigant at 3-5, Adidas of Am., Inc.
26  v. Calmese, CV-08-0091 (D. Or.).  Eastbay settled;  the Adidas case is pending.  It is further noted
    that at least four other trademark-related lawsuits have been initiated by Plaintiff during the last
27  decade, including: Calmese v. City of Glendale, CV2008-11415 (Ariz. Super. Ct.); Calmese v.
    Phoenix Suns Ltd. P'ship, CV2001-00866 (Ariz. Super. Ct.); Calmese v. Pimsner, CV1999-16543
28  (Ariz. Super. Ct.); and Prove It! Sportsgear, Inc. v. T.W.I.Z.Y, The World Is Yours, Inc., CV-98-

- 6 -

Defendant is correct that Plaintiff's ulterior motives in filing a trademark infringement lawsuit may lead a court to conclude that the lawsuit was filed in bad faith or is based on an unreasonable claim, warranting an award of attorneys' fees. See e.g. Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 623 F. Supp. 21, 22 (D. Ariz. 1985) (awarding attorneys' fees to a prevailing defendant because plaintiff's lawsuit was grounded in ulterior motives and thus not filed in good faith), rev'd on other grounds, 826 F.2d 837 (9th Cir. 1987); M2 Software, Inc., 281 F. Supp.2d at 1176-77 (ulterior motives in filing a trademark lawsuit may constitute bad faith and warrant the award of attorneys' fees). However, with the evidence presented, the Court is not convinced that Plaintiff's pre-litigation conduct establishes Plaintiff's bad-faith motives or the groundlessness of his claims. At most, Plaintiff's conduct, in both this and the other cases, evidences a lack of professionalism, yet without more, it does not compel the conclusion that Plaintiff's claims are "groundless, unreasonable, vexatious, or pursued in bad faith," that is, as Defendant argues, motivated entirely by profit instead of a desire to vindicate bona fide legal rights.[6] Cairns, 292 F.3d at 1156; see also e.g. M2 Software, Inc., 281 F. Supp.2d at 1176-77 ("[A]lthough Plaintiff's actions in this litigation have on occasion been misguided, the Court cannot find with the requisite confidence that Plaintiff pursued this action in bad faith.").[7] Finally, it appears unlikely that Plaintiff would bring to

---

2075 (D. Ariz.). See Mot. to Have Def. Declared Vexatious Litigant at Ex A, Adidas of Am., Inc., CV-08-0091(Oct. 22, 2008). Jeffrey Pimsner (the owner of T.W.I.Z.Y.) is Plaintiff's former business partner (Doc. 114 Ex. 3-1 at 12).

[6] It is noted that none of Plaintiff's prior trademark lawsuits, at least those which the Court has identified, have resulted in sanctions against Plaintiff. Of the six lawsuits identified above in Note 5, four resulted in settlement and stipulated dismissal, one resulted in a settlement/stipulated dismissal and dismissal for lack of prosecution and one remains pending. The issue of sanctions was only raised in one of the six cases, in which the opposing party filed a motion to sanction Plaintiff with attorneys' fees for bad-faith discovery abuses and a motion to have Plaintiff declared a vexatious litigant, both of which were orally denied. See Dkt. # 35-36, 59, 73-74, 96, Adidas of Am., Inc., CV-08-0091 (D. Or.).

[7] It is further noted that the primary case relied upon by Defendant to show pre-litigation conduct may result in § 1117(a) sanctions is distinguishable. See De la Torre Bueno v. Dance Perspectives Found., 71 U.S.P.Q.2d 1951, 2004 WL 1724950. The non-prevailing defendant in De la Torre Bueno promised the plaintiff that it would cease using plaintiff's marks in a signed letter

the Court's attention all the matters which he has litigated if he had an ulterior bad-faith motive when he filed them.

Given the evidence presented, Defendant has not carried the burden to show § 1117(a) sanctions are appropriate. However, Defendant's failure to meet the burden does not excuse Plaintiff's conduct, which came perilously close to warranting § 1117(a) attorneys' fees. Further, the alleged improprieties concerning affidavit preparation, if true, and Plaintiff's threatening correspondences may otherwise be sanctionable conduct, but not at this juncture.

Accordingly,

**IT IS ORDERED** Plaintiff's Motion for Reconsideration (Doc. 123) **IS DENIED**.

**FURTHER ORDERED** Defendant's Motion for Award of Attorneys' Fees (Doc. 122) **IS DENIED**.

DATED this 8th day of September, 2009.

_____
Roslyn O. Silver
United States District Judge

---

and then reneged on the promise, pretending as if the letter never existed. The defendant then proceeded to defend its case by arguing that the letter never existed, despite damning testimony from defendant's attorney and treasurer as well as damaging documentary evidence. The court in De la Torre considered the defendant's blatant lie and corresponding groundless defense to be obvious examples of "fraud and bad faith."  2004 WL 1724950, *2.  While Plaintiff's pre-litigation and litigation correspondences were abrasive and threatening, Plaintiff did not lie or otherwise commit fraud.